## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **ROBERT D. RAUSCHENDORFER,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **Case No. 1:24-cv-319** |
| **v.** | § | |
| | § | |
| **TEXAS BULLION EXCHANGE, INC.,** | § | |
| **EDWARD HEIN, JR., and** | § | |
| **JOHNATHAN D. RAMNATH** | § | |
| | § | |
| *Defendants* | § | |

## ORIGINAL COMPLAINT

**COMES NOW**, Plaintiff, Robert D. Rauschendorfer ("Mr. Rauschendorfer" or "Plaintiff") and files this Original Complaint against the *Corporate Defendant*, Texas Bullion Exchange, Inc. ("TBE") and the *Individual Defendants*, Edward Hein, Jr. ("Hein") and Johnathan D. Ramnath ("Ramnath") (collectively "Defendants") and for cause of action respectfully alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (RICO), and Texas law. This case involves a fraud scheme by Jefferson County precious metal coin dealers who committed telemarketing coin sales fraud against Mr. Rauschendorfer through and under the auspices of the corporate defendant, Texas Bullion Exchange, Inc., a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d) (the "TBE Enterprise").

2.    The TBE Enterprise's scheme was conducted by its principal/director, individual defendant, Hein and TBE telemarketing sales agent, individual defendant, Ramnath, through a closed-ended

pattern of racketeering activity of specific predicate acts, consisting of numerous high-pressure telemarketing phone calls[1] and fraudulent, unconscionably overpriced sales of precious metal numismatic[2] and "certified modern bullion" "Signature Series" coins to Mr. Rauschendorfer as "investments," in furtherance of the TEB Enterprise and to enrich Hein and Ramnath themselves, as well as common law fraud and other torts, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA") resulting in the unconscionably overpriced coin sales to Mr. Rauschendorfer.

**3.**    Defendant ***Edward Hein, Jr.*** is the principal/director of TBE, who maintained an interest in, masterminded, controlled, and directed the TBE Enterprise within the meaning of 18 U.S.C. § 1962(b) and both conducted and participated in the TBE Enterprise's affairs so as to defraud Mr. Rauschendorfer through a phony and fraudulent telemarketing coin investment scam of Hein's devising.

**4.**    Defendant ***Johnathan D. Ramnath*** (a/k/a Johnny B. Good) is a telemarketing employee, agent, and/or representative of TBE, who maintained an interest in and controlled and/or directed the TBE Enterprise within the meaning of 18 U.S.C. § 1962(b) and was the primary participant in the TBE Enterprise's misrepresentations and transactions with Mr. Rauschendorfer that defrauded him by way of a phony and fraudulent telemarketing coin investment scam.

**5.**    Plaintiff ***Robert D. Rauschendorfer*** is a 68-year-old Montana resident who fell prey to a fraudulent scheme devised, implemented, and directed by Hein and implemented by Ramnath in furtherance of the TBE Enterprise which is facilitated by and conducted through use of the U.S.

---

[1]  On information and belief, TBE recorded the telephone conversations with Mr. Rauschendorfer and maintains all of those recorded telephone conversations to the present.

[2] "Numismatic" coins are rare or collectible coins whose value derives from various criteria beyond simply their precious metal content, unlike "bullion" coins which are sold exclusively or primarily for their precious metal values.

mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Mr. Rauschendorfer of at least TWO HUNDRED THOUSAND EIGHT HUNDRED THIRTY and 61/100 DOLLARS ($200,830.61) as part of a closed-ended, systematic pattern of predicate acts of fraud lasting over three (3) years and accomplished through telemarketing sales and shipments of unconscionably overpriced numismatic and "certified modern bullion" "Signature Series" coins to Mr. Rauschendorfer.

**6.**     Mr. Rauschendorfer seeks to recover of and from the Defendants, jointly and severally, actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964 and/or for knowing violations of the Texas DTPA pursuant to Tex. Bus. & Com. Code § 17.50, pre- and post-judgment interest, attorneys' fees, litigation expenses, and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

**7.**     Plaintiff **Robert D. Rauschendorfer** is a citizen and resident of the State of Montana.

**8.**     Defendant **Texas Bullion Exchange, Inc.** ("TBE") is a privately held domestic corporation organized under the laws of the State of Texas with its registered office address at 17782 FM 365, Beaumont, Jefferson County, Texas 77705 and a principal office in Texas at 545 Interstate Highway 10 South, Beaumont, Jefferson County, Texas 77701. Texas Bullion Exchange, Inc. may be served with process by serving its Registered Agent for Service, Edward Hein, Jr., 17782 FM 365, Beaumont, Jefferson County, Texas 77705. TBE received monies—and facilitated the receipt of monies—by its principal/director, Edward Hein, Jr., that were defrauded and stolen from Mr. Rauschendorfer by Hein and TBE telemarketing sales agent, Johnathan D. Ramnath (and possibly others).

**9.**     Defendant **Edward Hein, Jr.** ("Hein") is a Texas citizen and resident of Jefferson County, Texas with a residential address of 17782 FM 365, Beaumont, Jefferson County, Texas 77705 and

a business address at 545 Interstate Highway 10 South, Beaumont, Jefferson County, Texas 77701. Hein is the principal/director of and controlled TBE. Hein participated in the conduct of the affairs of the TBE Enterprise and enriched himself, funded his own business activities, and funded the business activities of the TBE Enterprise with money defrauded and stolen from Mr. Rauschendorfer through and by way of a pattern of racketeering activity.

**10.**   Defendant **Johnathan D. Ramnath** ("Ramnath") is a Texas citizen and resident of Orange County, Texas with a residential address of 193 Donald Street, Bridge City, Texas 77611 and a business address at 545 Interstate Highway 10 South, Beaumont, Jefferson County, Texas 77701. Ramnath is a telemarketing sales agent and "Senior Account Manager" for TBE. Ramnath participated in the conduct of the affairs of the TBE Enterprise and enriched himself, funded his own business activities, and funded the business activities of the TBE Enterprise with money defrauded and stolen from Mr. Rauschendorfer through and by way of a pattern of racketeering activity.

*Jurisdiction and Venue*

**11.**   This Court has jurisdiction of this case as a federal question pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 insofar as they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

**12.**   In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Montana, and Defendants all are citizens of states other than Montana (i.e. Texas), and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

**13.**  This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from the TBE offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

**14.**  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**PROLOGUE: THE COIN FRAUD INDUSTRY
AND THE TBE ENTERPRISE**

A.  **Primer: the Coin *Fraud* Industry**

**15.**  While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[3] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

---

[3]  *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

B. **The Coin Fraudsters Prey Upon Seniors**.

**16.**  In 2014, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through [coin fraud] schemes, with losses around $300 million.*"[4] The U.S. Senate Report further revealed that the "*overwhelming number of victims in precious metal fraud are seniors*."[5] Likewise, the FBI has found that corrupt coin dealers intentionally target seniors specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it"* and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[6] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[7]

**17.**  The Texas Attorney General has issued a precious metals fraud consumer alert directed especially at seniors entitled: "Investing in Gold Coins: Consumers Should Do Their Homework Before Investing in Gold Coins"[8] which includes a list of "tips to avoid becoming a victim of fraud."

**18.**  Similarly, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the*

---

[4]  *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report*").

[5]  *See* US Senate Report at 16.

[6]  *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[7]  *See, e.g.*, https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[8]  *See* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins.

*years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims.*"[9]

**19.**  It is almost as though Hein and Ramnath utilized the government and regulatory "precious metals fraud" and "coin swindle" warnings as a business model and operate the TBE Enterprise as a textbook example of a coin telemarketing scheme to financially abuse elderly customers such as Mr. Rauschendorfer.

## FACTS COMMON TO ALL OF MR. RAUSCHENDORFER'S CAUSES OF ACTION

**20.**  Plaintiff Robert D. Rauschendorfer is 68-year-old Montana resident who estimates that he lost some 95% of his savings and is now financially struggling as a direct result of being conned into "investing" in precious metal coins and bullion and thus defrauded by the Defendants.

**21.**  Defendant Edward Hein, Jr. is the principal/director of Defendant TBE and acts as the mastermind of the TBE Enterprise, who over the course of some three (3) years, scammed and defrauded the elderly Mr. Rauschendorfer into making some thirty-two (32) discrete precious metal coin purchases from TBE between approximately January 12, 2021 and January 25, 2024. Through misrepresentations as to the quality, attributes, and value of the coins, Hein and "Senior Account Manager" Ramnath scammed Mr. Rauschendorfer into paying TBE a total of THREE HUNDRED SIXTY-SEVEN THOUSAND FOUR HUNDRED THIRTY-SEVEN and 13/100 DOLLARS ($367,437.13) by credit card and/or wire transfers for numismatic coins and "certified modern bullion" "Signature Series" coins that had a fair market value at the time of sale of just ONE HUNDRED SIXTY-SEVEN THOUSAND SIX HUNDRED EIGHT and 07/100 DOLLARS ($167,608.07), thereby incurring immediate losses at the time of purchase of TWO HUNDRED

---

[9] *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts.   https://www.ag.state.mn.us/consumer/publications/CoinDealers.asp (Minnesota).

THOUSAND EIGHT HUNDRED THIRTY and 61/100 DOLLARS ($200,830.61).

**22.**   In late 2020 and early 2021, Mr. Rauschendorfer was monitoring the state of the global and U.S. economies, as well as his own financial situation, and he began looking into putting some of his savings into precious metal bullion as a hedge against inflation. He determined that he ultimately wanted to put around $100,000 of his savings into bullion.

**23.**   With that goal in mind, Mr. Rauschendorfer began looking for a precious metals dealer, and he came across TBE. On January 12, 2021, he telephoned TBE and made his initial bullion purchase consisting of an assortment of thirty-five (35) 10-ounce bars of physical silver bullion.

**24.**   A month or so later, Plaintiff telephoned TBE again. This time Ramnath answered. Plaintiff explained that he was a "returning customer" and that he wanted to purchase more bullion bars. Ramnath was not satisfied with that, however, and he began a spiel to Mr. Rauschenberger about how coins—numismatic coins and particularly "certified modern bullion" coins signed by various coin design luminaries ("Signature Series" coins) were a "much better value" as an investment. Ramnath claimed that historically these types of coins could be expected to garner a twenty-percent (20%) rate of return on investment in as little as three years.

**25.**   Ramnath spoke with Mr. Rauschendorfer about investing in numismatic and "Signature Series" coins for over an hour that first time. Ramnath's apparent knowledge and expertise suckered Plaintiff in and convinced him to begin following Ramnath's "investment" recommendations to buy "certified modern bullion" "Signature Series" coins.

**26.**   Once Ramnath "sold" Mr. Rauschendorfer on "certified modern bullion" "Signature Series" coins as the way to diversify his investment savings, he began telephoning Plaintiff with frequency and regularity—hawking Plaintiff to take advantage of better and better purported "deals" on coins and convincing him to take advantage of "discounted" pricing on "rare" and "unique" coins.

27.   On several occasions, Mr. Rauschendorfer made contemporaneous handwritten notes on TBE invoices accompanying shipments of coins Ramnath sold him which detail Ramnath's representations about the qualities and "investment" values of the coins:

    a.   On **August 17, 2022**, Ramnath called Plaintiff and convinced him to purchase two (2) 1986 $1 American Silver Eagle "certified modern bullion" MS70 grade, early production coins signed by Miles Standish[10] for $7,250.00 each as "investments." Ramnath represented to Mr. Rauschendorfer that these "Signature Series" coins were "very rare," that there were only fifty-nine (59) of these coins in circulation, and that these Miles Standish-signed coins should be worth "$20,000 in two years."

    b.   On **October 17, 2022**, Ramnath telephoned Mr. Rauschendorfer and offered to sell him a 2022-W $25 American Palladium Eagle Reverse Proof NGC Early Release Mike Castle[11] Signature PF70 "certified modern bullion" coin for $6,250.00. Ramnath convinced Plaintiff to purchase this coin as an "investment" with representations that this palladium coin should be worth $12,000.00 in three (3) months.

    c.   On **December 2, 2022**, Ramnath called Mr. Rauschendorfer and offered to sell him a 2021-W $10 Gold American Eagle NGC MS70 "with W" Struck with Unfinished Proof Dies for $10,680.00 as an "investment" based on representations that this coin had been appraised by NCG at $19,000.00 (in other words, at over 40% below Ramnath's purported market value).

    d.   On **February 14, 2023**, Ramnath, based on representations that the coins on offer were "rare," called and convinced Mr. Rauschendorfer to purchase for "investment" purposes four (4) $10 Gold Liberty Head coins for a combined total

---

[10]   *See* https://www.ngccoin.com/coin-grading/labels/signature-labels/miles-standish/. (Michael "Miles" Standish was a "prominent numismatist, author, coin grader and industry innovator [who] served as vice president at NGC from 2015-2021. He is particularly well known for his innovations in the modern coin market and his keen ability to create successful certification programs for dealers.").

[11]   Mike Castle was Delaware's at-large representative in the House of Representatives from 1993 to 2011. While in Congress, Castle wrote and/or sponsored the bills that created the "50 State Quarters" program, the Sacagawea Dollar, the Presidential Dollar Series, the American Platinum Eagle, the "America the Beautiful" Quarters program and others, thereby acquiring the nickname, "The Coinage Congressman."

of $11,659.00.

e. On **October 17, 2023**, Ramnath telephoned Plaintiff and convinced him to purchase a 1995-W $1 American Silver Eagle NGC White Core PF69 "certified modern bullion" coin signed by Miles Standish for $6,595.00 as an "investment" based on representations that the coin was "very rare" and that within a short time Plaintiff would be able to sell the coin for $30,000.00 (approximately a 400% return on investment).

f. On **October 18, 2023**, Ramnath called Mr. Rauschendorfer and convinced him to purchase as an investment a 2023-W $100 Gold American Liberty High Relief NGC Early Release PF70 "certified modern bullion" coin signed by Miles Standish for $5,950.00 based upon Ramnath's representations that this coin was "rare" and that it had "appraised for $25,000.00."

g. On **January 9, 2024**, Ramnath's hyperbolic misrepresentations to Mr. Rauschendorfer reached their peak when he telephoned Plaintiff and offered to sell him a 1994 $50 American Gold Eagle NGC MS70 "certified modern bullion" coin signed by Miles Standish for $18,600.00 based on Ramnath's "guarantee" he would be able to sell the coin within one year for $70,000.00.

**28.** In addition to the foregoing, Ramnath also convinced Mr. Rauschendorfer to buy into the "investment" strategy of acquiring "modern day collections" of "certified modern bullion" coins. For example, Ramnath pressed Plaintiff to purchase "Signature Series" "certified modern bullion" coins signed by Jim Peed.[12] Ramnath advised Plaintiff to purchase "Jim Peed" signed bullion in order to assemble (purportedly) one of only two such "Jim Peed" collections in the entire world. Ramnath convinced Mr. Rauschendorfer to follow his "investment" advice and to continue buying coins from TBE based on representations that if Plaintiff followed Ramnath's coin "investment"

---

[12] *See* https://nnp.wustl.edu/Library/PersonDetail/1528. James Melvin "Jim" Peed, is a former United States Mint coin designer.

recommendations, Ramnath would make Plaintiff a millionaire.

**29.**   Having followed Ramnath's "investment" advice and assembling the "rare" and "unique" collection of "Jim Peed" signature "certified modern bullion" coins, in late 2023 Mr. Rauschendorfer decided to test the veracity of Ramnath's representations as to the "investment" value of the coins by insisting that TBE sell his "Jim Peed" collection for the $16,000-$17,000 which Ramnath had told him it was worth. Plaintiff shipped the "Jim Peed" collection to Ramnath at TBE; however, in return, he received only a check from TBE in the amount of $2,720.00. Concerned that there was a mix-up or mistake, Plaintiff telephoned Ramnath who said that there had been a mistake, told him not to cash the check, and said he would "take care of it." To date, Mr. Rauschendorfer has not received any monies from TBE from the sale of his "Jim Peed" collection, nor has TBE returned the coins to Plaintiff.

**30.**   Mr. Rauschendorfer reasonably relied upon the purported "expertise" and "investment" advice and representations of Ramnath only to discover after the fact that he had been swindled out of most of his savings in return for TBE coins that were worth but a fraction of the prices he paid for those coins.

**31.**   Embedded immediately below is **TABLE 1** which provides the particular details of each of Mr. Rauschendorfer's coin purchases from TBE made in reliance upon the "investment" advice, misrepresentations as to value, and high-pressure sales tactics of TBE's telemarketing sales agent, Ramnath.

### TABLE 1—Mr. Rauschendorfer's Transactions with TBE

| Date | Invoice # | Description | Total Price | FMV/item DOP | FMV Total DOP | Losses | % markup |
|------|-----------|-------------|-------------|--------------|---------------|--------|----------|
| 1/12/2021 | 13539 | Assorted 10oz Silver Bar | $  9,956.10 | $      285.00 | $  9,975.00 | $       (18.90) | 0% |
| 2/18/2021 | | 2016-PS100 Gold Pearl Harbor  MS70 PCGS | $  3,375.00 | $   2,200.00 | $  2,200.00 | $   1,175.00 | 53% |
| 2/25/2021 | | 1986-2020 SAE Set PF70 PCGS  Peed | $ 16,920.00 | $   8,428.00 | $  8,428.00 | $   8,492.00 | 101% |
| 3/11/2021 | | 2021-W Type 1 GAE  4 Coin Set PF70 NGC Castle | $ 11,125.00 | $   4,403.56 | $  4,403.56 | $   6,721.45 | 153% |

| Date | Item # | Description | | | | | |
|---|---|---|---|---|---|---|---|
| 3/17/2021 | 14065 | 2021-W Type 1 GAE  4 Coin Set PF70 NGC Castle | $ 11,125.00 | $ 4,403.56 | $ 4,403.56 | $ 6,721.45 | 153% |
| 4/29/2021 | | 2002$1 SAE MS69 PCGS First Strike  Peed | $ 2,700.00 | $ 38.00 | $ 760.00 | $ 1,940.00 | 255% |
| 6/7/2021 | | 2016-S$1 SAE  MS69 PCGS 30th Anniv.  Peed | $ 2,900.00 | $ 38.00 | $ 760.00 | $ 2,140.00 | 282% |
| 7/14/2021 | 14974 | 2021 Type 2 GAE 4 Coin Set MS70 NGC FDOI Standish | $ 9,500.00 | $ 4,391.53 | $ 4,391.53 | $ 5,108.47 | 116% |
| 10/22/2021 | 15638 | 2021-W type 2$25 GAE PF70 NGC  Standish  FDOI RE | $ 18,875.00 | $ 2,350.00 | $ 11,750.00 | $ 7,150.00 | 61% |
| 11/24/2021 | 15813 | 2021-W$10 GAE MS69 NGC | $ 8,500.00 | $ 3,360.00 | $ 3,360.00 | $ 5,140.00 | 153% |
| 1/26/2022 | 16120 | 2022$25 GAE 2-Coin Set MS70 NGC First Release | $ 4,700.00 | $ 1,040.00 | $ 2,080.00 | $ 2,645.00 | 127% |
| 2/15/2022 | 16246 | 2021-W$50 American Gold Buffalo PF70 NGC  Castle | $ 4,950.00 | $ 2,760.00 | $ 2,760.00 | $ 2,215.00 | 80% |
| 2/24/2022 | 16344 | 2021-W$100 American Liberty High Relief 24K PF70 NGC  Castle/  Standish | $ 11,604.18 | $ 2,855.00 | $ 5,710.00 | $ 5,894.18 | 103% |
| 4/25/2022 | 16827 | 2022-W$25 GAE PF70 NGC 4-Coin Set  FDOI Standish | $ 11,570.00 | $ 4,567.10 | $ 4,567.10 | $ 7,033.73 | 154% |
| 6/06/2022 | 17065 | 2022-W$50 Gold Buffalo PF70 NGC  FDOI  Standish | $ 5,165.00 | $ 3,000.00 | $ 3,000.00 | $ 2,195.98 | 73% |
| 8/17/2022 | 17469 | 1986$1 SAE MS70 NGC Standish | $ 14,500.00 | $ 840.00 | $ 1,680.00 | $ 12,850.78 | 765% |
| 10/17/2022 | 17810 | 2022-W$25 American Palladium Eagle Reverse Proof PF70 NGC Castle | $ 6,250.00 | $ 2,520.00 | $ 2,520.00 | $ 3,760.86 | 149% |
| 12/2/2022 | 18057 | 2021-W$10 GAE MS70 NGC "with W" Struck with Unfinished Proof Die | $ 10,680.00 | $ 4,560.00 | $ 4,560.00 | $ 6,150.86 | 135% |
| 1/16/2023 | 18225 | 2023$50 American Gold Buffalo MS70 NGC Texas Bullion Label | $ 14,200.00 | $ 2,489.50 | $ 9,958.00 | $ 4,275.57 | 43% |
| 2/14/2023 | 18420 | 1901-0$10 Gold Liberty Head NGC MS61 | $ 4,183.00 | $ 1,620.00 | $ 1,620.00 | $ 2,591.83 | 160% |
| 2/14/2023 | 18420 | 1903-0$10 Gold Liberty Head NGC AU58 | $ 2,492.00 | $ 1,200.00 | $ 1,200.00 | $ 1,292.00 | 108% |
| 2/14/2023 | 18420 | 1906-0$10 Gold Liberty Head NGC AU55 | $ 2,492.00 | $ 1,140.00 | $ 1,140.00 | $ 1,352.00 | 119% |
| 2/14/2023 | 18420 | 1904-0$10 Gold Liberty Head PCGS AU53 | $ 2,492.00 | $ 1,380.00 | $ 1,380.00 | $ 1,112.00 | 81% |
| 3/9/2023 | 18521 | 2023$50 American Gold Buffalo MS70 NGC Texas Bullion Label | $ 7,350.00 | $ 2,572.70 | $ 5,145.40 | $ 2,238.63 | 44% |
| 3/15/2023 | 18574 | 1895-0$10 Gold Liberty Head NGC AU53 | $ 2,314.00 | $ 1,170.00 | $ 1,170.00 | $ 1,144.00 | 98% |
| 3/15/2023 | 18574 | 1893-0$10 Gold Liberty Head NGC AU55 | $ 2,492.00 | $ 1,110.00 | $ 1,110.00 | $ 1,382.00 | 125% |
| 3/15/2023 | 18574 | 1894-0$10 Gold Liberty Head AU PCGS CAC AU55 | $ 2,581.00 | $ 1,200.00 | $ 1,200.00 | $ 1,381.00 | 115% |
| 3/15/2023 | 18574 | 1847 18/18-0$10 Gold Liberty Head VP-001 AU53 NGC | $ 3,827.00 | $ 1,560.00 | $ 1,560.00 | $ 2,306.40 | 148% |
| 3/23/2023 | 18649 | 1998$25 GAE MS70 NGC  Standish | $ 4,995.00 | $ 288.00 | $ 288.00 | $ 4,707.00 | 1634% |
| 3/28/2023 | 18671 | 2023$50 GAE MS70 NGC Texas Bullion Label | $ 3,675.00 | $ 2,566.20 | $ 2,566.20 | $ 1,137.45 | 44% |
| 3/30/2023 | | 1988$50 GAE MS70 NGC  Standish | $ 11,125.00 | $ 4,320.00 | $ 4,320.00 | $ 6,805.00 | 158% |
| 4/6/2023 | 18772 | 1988$50 GAE MS70 NGC  Standish | $ 11,125.00 | $ 4,320.00 | $ 4,320.00 | $ 6,849.75 | 159% |
| 4/11/2023 | 18797 | 2023-W 4-Coin Set GAE PF70 NGC  Standish Advance | $ 11,570.00 | $ 4,819.62 | $ 4,819.62 | $ 6,795.77 | 141% |
| 4/20/2023 | 18862 | 1988$50 GAE MS70 NGC  Standish | $ 11,125.00 | $ 4,320.00 | $ 4,320.00 | $ 6,849.75 | 159% |
| 5/30/2023 | 19094 | 1987$50 GAE MS70 NGC  Standish | $ 9,970.00 | $ 2,340.00 | $ 4,680.00 | $ 5,325.73 | 114% |
| 7/11/2023 | 19379 | 2023$1 Morgan & Peace Dollar 2-Coin Set MS70 NGC Standish | $ 3,475.00 | $ 200.00 | $ 1,000.00 | $ 2,507.97 | 251% |
| 8/16/2023 | | 2023-W$100 Gold High Relief PF70 NGC  Standish | $ 19,185.00 | $ 2,467.40 | $ 7,402.20 | $ 11,782.80 | 159% |
| 9/28/2023 | 19987 | 2023-W$100 Gold High Relief PF70 NGC  Standish | $ 19,185.00 | $ 2,425.80 | $ 7,277.40 | $ 11,968.62 | 164% |
| 10/17/2023 | 20153 | 1995-W$1 SAE PF69 NGC  Standish White Core | $ 6,595.00 | $ 3,000.00 | $ 3,000.00 | $ 3,637.92 | 121% |
| 10/18/2023 | 20157 | 2023-W$100 Gold Liberty High Relief PF70 NGC Standish | $ 5,950.00 | $ 2,653.36 | $ 2,653.36 | $ 3,338.27 | 126% |
| 10/27/2023 | 20217 | 2023-S$1 Morgan & Peace Silver Dollar 2-Coin Set Reverse Proof PF70 NGC  Standish | $ 1,630.00 | $ 200.00 | $ 400.00 | $ 1,265.97 | 316% |
| 12/4/2023 | 20513 | 2002$25 GAE MS70 NGC  Standish  MS | $ 2,575.00 | $ 1,456.00 | $ 1,456.00 | $ 1,119.00 | 77% |
| 12/4/2023 | 20513 | 2013$10 GAE MS70 PCGS Diehl | $ 916.85 | $ 550.00 | $ 550.00 | $ 366.85 | 67% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/4/2023 | 20513 | 2022-WS5 GAE PR70 PCGS  Peed | $ 1,500.00 | $ 312.00 | $ 624.00 | $ 917.99 | 147% |
| 12/8/2023 | 20592 | 1986$10 GAE MS69 NGC  Standish | $ 1,260.00 | $ 720.00 | $ 720.00 | $ 540.00 | 75% |
| 12/8/2023 | 20592 | 1986$25 GAE MS69 NGC  Standish | $ 2,695.00 | $ 1,320.00 | $ 1,320.00 | $ 1,414.53 | 107% |
| 12/14/2023 | 20635 | 2024$25 GAE MS70 NGC  Standish | $ 2,475.00 | $ 1,324.70 | $ 1,324.70 | $ 1,184.06 | 89% |
| 12/22/2023 | 20684 | 2024$25 GAE MS70 NGC  Standish | $ 2,492.00 | $ 1,334.45 | $ 1,334.45 | $ 1,195.12 | 90% |
| 1/9/2024 | 20753 | 1994$50 GAE MS70 NGC  Standish | $ 18,600.00 | $ 7,800.00 | $ 7,800.00 | $ 10,834.89 | 139% |
| 1/25/2024 | 20854 | 2019-WS100 Gold High Relief SP70 NGC Ryder/Moy Burnished Dual | $ 6,500.00 | $ 2,640.00 | $ 2,640.00 | $ 3,894.89 | 148% |
| | | **TOTALS** | **$367,437.13** | | **$ 167,608.07** | **$ 200,830.61** | **169%** |

**32.** As set out in detail above, Ramnath, TBE's telemarketing sales agent, "Senior Account Manager," and a member of the TBE Enterprise, was the point man in a confidence scheme run on Mr. Rauschendorfer to convince him to purchase grossly overpriced numismatic and "certified modern bullion" "Signature Series" coins as "investments" and thereby defraud Mr. Rauschendorfer. The ultimate goal of Hein and Ramnath, and the primary, if not entire, business model of TBE and the TBE Enterprise as set up, overseen, and controlled by Hein, is to defraud and impoverish elderly customers such as, and including, Mr. Rauschendorfer, and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, Mr. Rauschendorfer has suffered (and continues to suffer) devastating economic damages, which Defendants refuse to remedy.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS
### (AGAINST DEFENDANTS HEIN AND RAMNATH)

**33.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**34.** At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**35.** At all relevant times, "TBE" was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**36.**  At all relevant times, Defendant Hein was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**37.**  At all relevant times, Defendant Ramnath was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**38.**  Defendants Hein and Ramnath, as members of the TBE Enterprise had a meeting of the minds and agreed to commit a series of mail and wire frauds constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) against Mr. Rauschendorfer, and, on information and belief, other elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate acts of the conspiracy against Mr. Rauschendorfer, began no later than January 12, 2021 and continued through at least January 25, 2024. Defendants, Hein and Ramnath each participate in the TBE Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and Ramnath interacted directly with Plaintiff as a telemarketing sales agent and representative of TBE and the TBE enterprise, and Hein and Ramnath, as members of the TBE Enterprise, agreed to facilitate and commit the individual predicate acts of mail and wire fraud as part of the fraudulent scheme targeting Mr. Rauschendorfer, in furtherance of the TBE Enterprise and to enrich themselves.

**39.**  This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341) and wire fraud (in violation of 18 U.S.C. § 1343). Hein and Ramnath, as members, directors, and, at least in Ramnath's case, a telemarketing sales agent, of the TBE Enterprise, knew that the TBE telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including specifically Plaintiff, to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of the

14

predicate acts constituting their pattern of unlawful activity.

**40.**   Hein and Ramnath are members of the TBE Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect or predicate act of the TBE Enterprise.

**41.**   Hein's and Ramnath's pattern of unlawful activity conducted as individuals and in their representative capacities as members and representatives of the TBE Enterprise proximately and/or directly caused Plaintiff to suffer injury to his business and/or property within the meaning of 18 U.S.C. § 1964(c).

**42.**   As a direct and proximate result of the violations set forth above, Mr. Rauschendorfer has been injured, and Hein's and Ramnath's 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Rauschendorfer is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT II
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343) (AGAINST DEFENDANTS HEIN AND RAMNATH)

**43.**   Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**44.**   At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**45.**   At all relevant times, TBE was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**46.**   At all relevant times, Defendant Hein was a "person" within the meaning of 18 U.S.C. §§

1962(b), 1962(c) and 1962(d).

**47.**  At all relevant times, Defendant Ramnath was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**48.**  By the acts described herein, Defendants Hein and Ramnath, as members of the TBE Enterprise, knowingly executed and/or intentionally participated in a scheme that defrauded, and was intended to defraud, Mr. Rauschendorfer, and, on information and belief, numerous other elderly citizens, and employed the use of the mails, as an integral part of said scheme and in furtherance thereof.

**49.**  Central to, and in furtherance of, that scheme, and as described in detail above, Defendant Hein, in his capacity as owner/principal of TBE and Ramnath, the principal telemarketing sales agent for TBE, as a purported and self-professed "investment advisor," as members of the TBE Enterprise, authorized (Hein) and made (Ramnath) grossly inaccurate misrepresentations over the telephone to Mr. Rauschendorfer as to the: (1) grade/quality of the coins, (2) the fair market value of the coins, and (3) the "investment" potential of the coins they marketed and advised Mr. Rauschendorfer to purchase from TBE and, taking advantage of his reliance on such misrepresentations, overcharged him for those coins by factors of dozens or hundreds of times more than any commercially supportable price for the coins in furtherance of the TBE Enterprise and to enrich themselves.

**50.**  Hein's and Ramnath's use of the wires in perpetrating the scheme was not merely incidental to the fraud and misrepresentations as to grade and value of the coins but rather, given that the scheme was dependent upon telemarketing technology, was instrumental to the scheme in that Mr. Rauschendorfer was never able to see Ramnath in person, look him in the eye, and gauge his sincerity and veracity—much less physically examine the coins before purchase. Hein and

Ramnath further compounded the misrepresentations as to the coins' grade, value, and investment potential by enclosing with the coin shipments via interstate "private or commercial interstate carrier" TBE sales invoices which repeated (and documented) the gross misrepresentations and fraudulent overpricing as to the coins offered and sold by Ramnath as a representative of TBE to Mr. Rauschendorfer as "investments, both to enrich himself and Hein and in furtherance of the TBE Enterprise. Those TBE invoices constitute correspondence sent or delivered by a private or commercial interstate carrier incorporating false and misleading statements regarding the values and grades of the coins.

51.   The means by which Defendants Hein and Ramnath were able to remotely market the coins to Mr. Rauschendorfer at such exorbitantly outrageous prices in furtherance of the scheme and thereby defraud him of a substantial portion of his life savings is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of Hein and Ramnath as members of the TBE Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

52.   As a direct and proximate result of the violations set forth and summarized in TABLE 1, *supra,* Mr. Rauschendorfer has been injured. The multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 authorized (by Hein) and perpetrated (by Ramnath) are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Rauschendorfer is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT III**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO) AGAINST INDIVIDUAL DEFENDANT HEIN FOR**
**MONEY LAUNDERING (18 U.S.C. § 1956(a)(1))**

**53.**   Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual

statements and allegations therein, as though fully copied and set forth below at length.

**54.**   Defendant Hein laundered monies defrauded from Mr. Rauschendorfer (and, on information

and belief, other elderly telemarketing customers of TBE) in violation of 18 U.S.C. § 1956(a)(1)

and in furtherance of the TBE Enterprise.

**55.**   There were numerous financial transactions authorized and overseen by Hein and conducted

by Ramnath through the TBE Enterprise which involved proceeds of specified unlawful activities

(that is, the mail fraud and wire fraud scheme detailed above) as defined in 18 U.S.C. § 1956(c)(7)

in furtherance of the TBE Enterprise and in which Hein participated and by which he was enriched.

Hein had actual knowledge that the property involved in these financial transactions represented

the proceeds of unlawful activities. Hein had actual knowledge that the transactions were designed

in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and/or

the control of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In

addition, or else in the alternative, Hein conducted or attempted to conduct the transactions with

the intent to promote the carrying on of the specified unlawful activities. *Id.* at § 1956(a)(1)(A)(i).

**56.**   Hein laundered monies defrauded from Mr. Rauschendorfer (and, on information and belief

other elderly customers of TBE) in violation of 18 U.S.C. § 1956(a)(1) to enrich himself and in

furtherance of the TBE Enterprise. As a direct and proximate result of this violation, Mr.

Rauschendorfer has been injured. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr.

Rauschendorfer is entitled to bring this action and recover treble damages, the costs of bringing

this suit, prejudgment interest and attorneys' fees.

## IV.
## FRAUD

**57.**   The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges:

**58.**   Via a lengthy series of oral misrepresentations and high-pressure sales tactics (as set out in detail above), Ramnath, individually and as a telemarketing sales agent of TBE, and holding himself out as an "investment advisor," convinced Plaintiff to purchase grossly overpriced numismatic and "certified modern bullion" "Signature Series" coins from TBE as "investments" at exorbitant markups, thereby defrauding Plaintiff and enriching TBE, himself and TBE's principal/director, Hein.

**59.**   Such false representations were made knowingly and intentionally by Ramnath, in his individual capacity and his capacity as a telemarketing sales agent of TBE, and with his actual knowledge or, at the very least, in reckless disregard of Mr. Rauschendorfer's rights and interests. Further, those false representations of Ramnath were made with the approval of TBE's principal Hein and with his full knowledge.

**60.**   Ramnath, individually and as a telemarketing sales agent of TBE, made the above-detailed false representations to Mr. Rauschendorfer with the intent that he rely upon them and with full knowledge that such representations were false when made. Mr. Rauschendorfer did, in fact, justifiably rely on these material and false representations when deciding to purchase the coins from TBE which resulted in his financial devastation and the Defendants' obscene financial gain. As a direct and/or proximate result of the false and misleading representations of telemarketing sales agent Ramnath, all of which were known to and approved and authorized by Hein and are attributable to TBE, Mr. Rauschendorfer has suffered (and continues to suffer) damages arising

from and related to the amounts greatly in excess of fair market values he paid TBE for the coins at issue, which has resulted in the theft and conversion of a significant portion of his retirement savings at the hands of the Defendants, as well as mental anguish damages.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**

**61.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges that:

**62.** As set forth above, Ramnath, while operating as a telemarketing sales representative of TBE, and expressly representing himself to be a precious metal coin expert and "investment advisor," made certain representations (described in detail above) to Mr. Rauschendorfer in the course of TBE's business and in precious metal coin "investment" transactions in which Ramnath, Hein, and TBE had a substantial monetary interest. To the extent that the acts, omissions, and representations of Ramnath to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Ramnath was, at minimum, negligent in making misrepresentations as to the coins marketed and sold to Plaintiff by and on behalf of TBE. Specifically, Ramnath negligently supplied false information that guided Mr. Rauschendorfer in his decisions to purchase the grossly overpriced coins from TBE

**63.** Ramnath failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information to Mr. Rauschendorfer and/or making the above-described false and material misrepresentation.

**64.** Mr. Rauschendorfer justifiably relied upon Ramnath's negligent misrepresentations when he purchased the grossly overpriced coins from TBE, which misrepresentations directly and/or proximately caused Mr. Rauschendorfer to suffer significant damages to the financial benefit of

20

TBE, Hein, and Ramnath. Ramnath's wrongful conduct, which is attributable not just to himself but also to TBE and Hein, constitutes negligent misrepresentation.

## COUNT VI
## NEGLIGENCE

**65.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

**66.** Defendants negligently valued, priced, promoted, marketed, advertised, and sold grossly overpriced coins to Plaintiff. In doing so, the Defendants owed a duty to Plaintiff to exercise reasonable care in valuing, pricing, promoting, marketing, advertising, and selling the coins, which duty the Defendants breached, and which breach proximately caused Plaintiff to suffer damages. The Defendants' wrongful conduct constitutes negligence at Texas common law.

## COUNT VII
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-
## CONSUMER PROTECTION ACT (DTPA)

**67.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

**68.** Mr. Rauschendorfer is a "consumer" under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), as defined by Section 17.45(4) of the Texas Business and Commerce Code.  Likewise, each of the Defendants is a "person" that may be sued pursuant to DTPA Section 17.45(3).

**69.** By their above-described wrongful acts and/or misrepresentations, the Defendants engaged in false, misleading, and deceptive acts and practices in violation of Sections 17.50(a)(1) and 17.46(b)

of the Texas DTPA to wit: Defendants, *inter alia*, (i) represented that the coins have values that they do not have and that significant investor and collector demand exists for the coins that will cause them to appreciate in value, which demand does not exist and which appreciation in value will not happen (Section 17.46(b)(5)); (ii) represented that the coins are rare and/or unique and that investors and collectors are substantially desirous of the coins, which will cause the coins to appreciate significantly above the purchase prices paid by Mr. Rauschendorfer in the future, which appreciation in value will not occur (Section 17.46(b)(7)); and (iii) failed to disclose the above-described information about the coins, which Defendants knew at the time of the transactions, and which the Defendants withheld with the intent to induce Plaintiff to purchase the coins and with knowledge that Plaintiff would not have purchased the coins had Defendants disclosed such information (Section 17.46(b)(24)). Mr. Rauschendorfer relied on Defendants' above-described misrepresentations and omissions in purchasing the coins to his financial detriment.

**70.**   More specifically, Ramnath, individually and in his capacity as a telemarketing sales agent for TBE, and with the knowing approval of Hein, knowingly and intentionally utilized unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Mr. Rauschendorfer to purchase grossly overpriced coins from TBE, through one or more of the following deceptive acts or practices, including:

a.   Holding himself out as an "investment advisor" while having no investment expertise;

b.   Holding himself out as a precious metals expert while having no actual education, certification, or extensive experience in numismatics, grading, or valuation of coins;

c.   Misrepresenting attributes, grades, and values of precious metal coins;

d.   Advising customers to purchase "unique," "rare, and "desirable" "certified modern bullion" coins, when, in fact, there is nothing unique or rare about the coins;

22

e.  Using grading and marketing to deceptively sell bullion at a premium as some type of "modern numismatics" or "certified modern bullion," even though there are very large populations of the high-grade coins and/or the "certification" is commonly duplicated with minor expense;

f.  Misrepresenting the market values of the coins to prevent or delay customers from determining the actual market price of the coins; and

g.  Various other acts and practices that may be uncovered during discovery.

**71.**  By their above-described wrongful acts and/or misrepresentations, the Defendants also violated Section 17.50(a)(2) of the Texas Business and Commerce Code by breaching the implied and/or express warranties they made to Plaintiff as to the coins' values and that significant investor and collector demand exists for the coins that will cause them to appreciate in value significantly above their purchase prices.

**72.**  By the above-described wrongful acts and/or misrepresentations, Defendants also violated Section 17.50(a)(3) of the Texas Business and Commerce Code by engaging in unconscionable actions and/or an unconscionable course of action because such wrongful acts and practices took advantage of Mr. Rauschendorfer's lack of knowledge, ability, experience, and/or capacity to a grossly unfair degree to his financial detriment.

**73.**  Defendants also violated the DTPA for failing to comply with Texas Business and Commerce Code, Sections 302.101, 302.105, 302.151(11)-(16), 302.152, and 302.153(a). Pursuant to Section 301.104, the Plaintiffs are entitled to damages "not . . . less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs."

**74.**  Based upon these violations, Mr. Rauschendorfer seeks recovery of his actual damages, plus reasonable attorney's fees, and court costs. Mr. Rauschendorfer also seeks treble damages pursuant to Section 302.303 and Section 17.50 of the Texas Business and Commerce Code.

## COUNT VIII
## MONEY HAD AND RECEIVED

**75.**    The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**76.**    By their above-described wrongful actions: (1) each of the Defendants received money belonging to Plaintiff, (2) each of the Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the Defendants should not be permitted to keep the money. The Defendants, therefore, should be compelled to refund such wrongfully charged and collected funds to Plaintiff under the equitable doctrine of money had and received.

## COUNT IX
## UNJUST ENRICHMENT

**77.**    The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**78.**  The Defendants have been unjustly enriched by receipt of funds which were obtained through fraud and/or stolen from Plaintiff.

**79.**  Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the Defendants have been unjustly enriched.

## ALTER-EGO

**80.**  The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**81.**  Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce

the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

82.  Based upon information and belief, Defendant Hein uses the corporate form of TBE as an alter-ego and as a mere tool or business conduit. Hein completely dominates TBE to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between TBE and Hein, and there is an unclear allocation of profit and losses between TBE and Hein. In short, TBE is substantially one and the same with Hein, and the relationship between TBE and Hein is an illegitimate use of the corporate form.

## RESPONDEAT SUPERIOR

83.  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

84.  Defendant TBE also is liable for the above-detailed wrongful acts committed by its telemarketing sales representative, Ramnath, during the course and scope of his agency with TBE; to wit, Ramnath's wrongful conduct was committed (i) within his general authority, (ii) in furtherance of TBE's business, and (iii) to accomplish Hein's and Ramnath's objective, namely, to directly and/or proximately cause Plaintiff to suffer damages to the financial benefit of TBE, Hein, and Ramnath—and for which TBE is liable under the doctrine of *respondeat superior*.

## RELIEF REQUESTED

85.  **RECISSION**.  Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transaction(s) at issue by which Defendants fraudulently marketed and sold the grossly overvalued coins to Plaintiff. All conditions precedent to Plaintiff's claims for relief have

been performed and/or occurred.

**86.   ACTUAL AND CONSEQUENTIAL DAMAGES.**   As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, *inter alia*, the amounts paid to Defendants for the coins in excess of their value. Plaintiff is entitled to recover consequential damages and damages for the mental anguish he has suffered in connection with these transactions—in an amount to be determined by the trier of fact.   All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**87.   TREBLE DAMAGES.**   Plaintiff also is entitled to treble damages for Defendants' knowing, willful, and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c). In addition, or else in the alternative, Plaintiff is entitled to treble damages for Defendants' knowing, willful, and intentional wrongful conduct in violation of the Texas DTPA, Section 17.50(b)(1) of the Texas Business and Commerce Code. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**88.   EXEMPLARY DAMAGES**.   The Defendants' wrongful actions were committed through fraud and/or intentionally, willfully, with malice, and/or with conscious and/or reckless disregard for the Plaintiff's rights and interests. Accordingly, Mr. Rauschendorfer is entitled to an award of punitive damages against each of the Defendants, both as punishment and to discourage such wrongful conduct in the future.   Further, punitive damages are not capped or limited because Defendants' wrongful conduct constitutes a felony under Section 32.46 and Chapter 31 of the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code § 41.008(c). All conditions precedent to the Plaintiff's claim for relief have been performed and/or occurred.

**89.   ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**.   Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses, and court costs.

**WHEREFORE**, Plaintiff, Robert D. Rauschendorfer, requests judgment in his favor and against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c) and/or the Texas DTPA, exemplary damages, and/or all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and the Texas DTPA, and costs of suit; together with pre-judgment interest, and such other and further relief as the Court deems just, proper, and equitable.

## <u>JURY DEMAND</u>

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

### STEVENS LAW FIRM

By: /s/ *R. Lyn Stevens*
    R. Lyn Stevens
    P.O. Box 1187
    Friendswood, Texas 77549
    (409) 880-9714
    *Lyn@Stevens.Law*
    Texas Bar No. 19189020

    *Attorneys for Plaintiff,*
    *Robert D. Rauschendorfer*